# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **LOU GARY KEITH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00062 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** [1] | ) | |
| | ) | |
| Defendant. | ) | |

*Stephen W. Mullins, Stephen W. Mullins, P.C., Castlewood, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Cathleen McNulty, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Lou Gary Keith filed this action challenging the final decision of

the Commissioner of Social Security (the "Commissioner") denying his claim for

disability insurance benefits pursuant to Title II of the Social Security Act (the

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

"Act"), 42 U.S.C.A. §§ 401-34 (West 2011 & Supp. 2013).   Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Keith applied for benefits on June 25, 2010, alleging disability beginning October 28, 2003.  He met the insured status requirements through December 31, 2008.  His claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on February 22, 2012, at which Keith, represented by counsel, and a vocational expert ("VE") testified.  On March 13, 2012, the ALJ issued a decision finding that Keith had the residual functional capacity ("RFC") to do sedentary work with certain restrictions, was capable of performing work that existed in significant numbers in the national economy, and thus was not disabled under the Act.  Keith requested review by the Social Security Administration's Appeals Council.  The Appeals Council denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner. Keith then filed his Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed, and I have heard oral argument.  The case is now ripe for decision.

II

Keith claims disability based on degenerative disc disease, herniated disc of the cervical spine with fusion, spinal canal stenosis secondary to disc-osteophytic bulging and protrusions, foramen stenosis of the cervical spine, disc protrusions of the lumbar spine resulting in foramen stenosis, and pain in bilateral lower extremities.[2]  He obtained a general equivalency diploma in 2008.  Keith formerly worked as a pipe installer, but he stopped working on October 27, 2003, due to a work-related injury, for which he later received workers' compensation benefits. He was 38 years old on his date last insured, making him a younger individual under the regulations.  *See* 20 C.F.R. § 404.1563(c) (2013).  The record indicates that Keith has not engaged in substantial gainful activity since the alleged onset date.

The medical evidence of record reveals that Keith had undergone a microdiskectomy in 1999, and during the relevant time period, Keith had degenerative disc disease with disc bulging and underwent a lumbar fusion.  In September and October 2003, Keith saw John B. Mazur, M.D., for treatment of back pain and pain and numbness in his thighs.  He received epidural steroid

---

[2]  Keith initially claimed disability on the basis of additional mental and physical impairments, but he did not address those alleged impairments in his brief in support of his Motion for Summary Judgment or at oral argument.  Therefore, the recitation of the facts will be limited to the asserted spinal conditions and resulting pain.

injections from James Wilson, M.D., but reported that the injections were ineffective.

In November 2003, orthopedic surgeon Mark A. Lorenz, M.D., examined Keith and noted a mildly positive straight leg raise, difficulty toe walking, and limited range of motion. Dr. Lorenz prescribed Vicoden and physical therapy. Later that month, pain management specialist Gary L. Koehn, M.D., performed an evaluation that revealed disc disruption and discogenic pain. Dr. Koehn prescribed Toradol and Percocet.

In December 2003, Dr. Lorenz performed a diskectomy and spinal fusion. One week following the surgery, Keith reported that his back pain was tolerable with Vicodin. He was healing well and had negative straight leg raise and good motor skills. Dr. Lorenz recommended that Keith continue wearing a brace and apply heat to his back, and he prescribed Norco. The following week, Keith called Dr. Lorenz's office to complain of continuing pain, though he said the numbness in his legs was improving. Keith reported that his pain was not so bad as to require treatment at that time. By January 2004, he complained only of a tingling sensation in his thighs and tight hamstrings. He was doing well overall, and Dr. Lorenz advised him to continue to move around and wear a back brace.

Keith returned to Dr. Lorenz for a re-evaluation in February 2004. He reported that his pain was about the same, he was taking six to seven Vicodin per

day, and he was experiencing intermittent left leg numbness.  Dr. Lorenz noted that

he had a negative straight leg raise and good motor power.  Dr. Lorenz assessed

"[l]eft graft site pain with what appears to be some entrapment of the sciatic nerve

possibly and some radiculitis."  (R. at 309.)  He recommended physical therapy

and continuing on Norco, and he predicted that Keith would no longer need to

wear a brace following his next appointment.

In early March 2004, Keith again saw Dr. Lorenz, complaining that his leg

had buckled and his pain was worsening.  An examination showed good strength,

negative straight leg raising, and ability to toe and heel walk without difficulty.

Dr. Lorenz prescribed Bextra for pain and inflammation and scheduled CT scans to

attempt to determine a reason for Keith's left leg pain.  By the end of March, Keith

had been using a Fentanyl patch along with Norco and reported that his pain was

much better controlled.  Keith also indicated that his physical therapy was going

well.

In June 2004, Dr. Koehn observed that Keith was "sitting and standing in

exam room in minimal distress."  (R. at 328)  Keith reported that he was making

progress and had been doing quite well on his most recent medication regimen, but

had to stop taking Duragesic because it was too expensive.  Dr. Koehn noted some

tenderness, but straight leg, crossed leg, and hip manipulation tests were negative,

and foot, ankle, and knee flexion were good.  Dr. Koehn indicated that Keith's pain

"continues to improve." (*Id.*)  Dr. Koehn added Methadone to Keith's medication regimen.

Later that month, Keith visited Dr. Lorenz and indicated that the hardware from his fusion was causing him intolerable pain.  Dr. Lorenz administered a local injection and recommended reevaluating Keith's pain in several weeks.  Keith returned to Dr. Koehn a few weeks later and stated that he had not taken the Methadone that Dr. Koehn had previously offered.  He continued to complain of pain.  Dr. Koehn noted some tenderness, but straight leg raising was negative.  Dr. Koehn again recommended Methadone, noting that of all the options, it was the most affordable and had the least potential for dependence, and Keith agreed to try it.

In early August 2004, Keith told Dr. Lorenzo that his back pain was tolerable but he had begun to experience thigh pain and numbness.  Dr. Lorenz noted good strength in the lower extremities and negative straight leg raising.  He decided to remove Keith's lumbar hardware.

In late October 2004, however, Keith told Dr. Koehn that he was no longer approved for the hardware removal.  Keith again complained of pain, but straight leg raising, crossed leg testing, and hip manipulation were negative; toe and heel walking were unremarkable; and Dr. Koehn observed that Keith did not appear to be in distress.  Dr. Koehn noted,

> The patient, wife, family are just at complete extremes.  I don't see
> any neurologic loss and would not recommend any additional workup
> at this point unless there is recurrence of symptoms or progression
> . . . . Whether he is a surgical candidate or not, has surgery or not, he
> is to move on with his pain functional status/life. . . .

(R. at 376.)

In February 2005, Dr. Lorenz performed a lumbar hardware removal and fusion inspection, which showed a solid fusion and no movement.  Later that month, Keith told Dr. Lorenz that his back was feeling better and he no longer had a pinching sensation.  In March, Keith told Dr. Lorenz that he was feeling better overall about his back.

Keith also visited Dr. Koehn again in March 2005.  He had tapered his use of prescription pain medications and reported that he was doing better overall.  At the time of his visit, he was about to begin a six-week course of physical therapy. Dr. Koehn again noted some tenderness on examination, but once again, straight leg and crossed leg testing were negative and hip manipulation was unremarkable.

In May 2005, Daniel Curtis, a physical therapist and Key Certified Functional Assessment Specialist, assessed Keith's functional capacity.  He concluded that Keith could perform work at the sedentary to light level and was capable of occasionally lifting and carrying up to thirteen pounds.  According to Curtis, Keith could sit for forty-five minutes at a time, with breaks, for a total of four hours; stand for thirty minutes at a time, with breaks, for three to four hours;

walk occasional moderate distances, with breaks, for three to four hours; and occasionally bend/stoop, squat, crawl, climb stairs, crouch, kneel, and balance.

Later that month, Dr. Koehn noted that Keith's back pain and radiculopathy were improving.  Dr. Koehn indicated that Keith had "[l]ittle to no tenderness in the lumbar paraspinous region."  (R. at 337)  He again observed Keith in no apparent distress and noted negative straight leg raising and toe and heel walking. The following day, Dr. Lorenz noted a normal neurological exam and recommended vocational rehabilitation.  He indicated that Keith could not return to his former job but could perform sedentary work.

By July 2005, Keith had been discharged from the care of Dr. Lorenz.  He reported to Dr. Koehn that his back pain was relatively stable.  Dr. Koehn again noted no apparent distress, and while there was some tenderness, straight leg raising and toe and heel walking were negative.  Dr. Koehn noted that lumbar flexibility was fifty degrees before discomfort.  Dr. Koehn stated that Keith's low back pain "continues to improve."  (R. at 450.)  Dr. Koehn instructed Keith to taper and eliminate his use of prescription pain medication and to maximize his home exercise program.

Keith continued to see Dr. Koehn for the next three years.  The notes from these visits generally show improvement in Keith's pain and symptom control, though he continued to experience tenderness.  Straight leg raising, crossed leg,

and hip manipulation were repeatedly negative. During this time period, Keith reported increased physical activity in the form of exercising and doing chores around the house. He also indicated that he had been job hunting continuously. In August 2007, Dr. Koehn opined, "Vocational opportunities, rehabilitation should now be pursued. The patient is at maximum medical improvement. He has extended himself in the last interval to make his spine fitness better, to his benefit." (R. at 488.) In February 2008, Dr. Koehn noted that Keith was taking a computer training course as well as GED classes, exercised at the YMCA for one hour nearly every day, and was "happy with the progress that he [had] made at this point and want[ed] to continue to improve in all aspects." (R. at 492.)

In November 2008, Keith returned to Dr. Lorenz, complaining of increased pain. He had been attending vocational rehabilitation for three hours per day and commuting forty-five minutes by train. He reported that the increased activity had worsened his pain and decreased his quality of life significantly. Keith told Dr. Lorenz that he had applied to thousands of jobs and had not been able to secure employment. On examination, Dr. Lorenz noted that Keith was not in acute distress and could heel-to-toe walk without difficulty. Dr. Lorenz opined that Keith was "permanently and totally disabled from any gainful employment" and "will be permanently off work." (R. at 292.)

Later in November 2008, Keith saw Dr. Koehn and again reported an increase in his pain level due to increased physical activity. Dr. Koehn discussed other treatment options, including spinal cord stimulation, but did not change his medications.

At the hearing, Keith testified that he is in constant pain and that his pain worsens as a result of increased physical activity. He manages his pain with prescription medications and by resting. Keith described his daily activities, which include making sure his children are ready for school, doing exercises that he learned in physical therapy, preparing meals for himself and his family, driving approximately thirty-five minutes round trip to pick his children up from school, helping his children with their homework, gardening, and watching television or reading.

The ALJ described to the VE a hypothetical person of Keith's age, education, and work experience who could perform sedentary work with certain limitations relating to foot control; climbing ladders, ropes, and scaffolds; and exposure to moving machinery, hazardous machinery, and unprotected heights. The VE testified that such a person could not perform Keith's past relevant work but could perform work as a material handler or general production worker at the sedentary, unskilled level. The VE further testified that there are 46,000 and 34,000 of these positions, respectively, in the national economy. The ALJ then

asked the VE whether adding a requirement of up to two unscheduled fifteen-minute breaks per day would change his opinion, and the VE testified that such a requirement would eliminate all competitive employment.

The ALJ determined that Keith met the insured status requirements through December 31, 2008 and had not engaged in substantial gainful employment after his alleged onset date of October 28, 2003.  The ALJ further found that Keith had the severe impairments of degenerative disc disease of the lumbar spine with arthritis and obesity, but that these impairments did not meet or medically equal a listed impairment.  The ALJ determined that Keith had the RFC to perform sedentary work with certain restrictions, could perform work that existed in significant numbers in the national economy, and thus was not disabled.

Keith contends that the ALJ's decision is not supported by substantial evidence.  Specifically, Keith argues that the ALJ erred by failing to properly assess whether he was disabled by pain, relying on the opinions of non-examining state agency physicians, overly emphasizing activities of daily living, and improperly considering the fact that Keith had received worker's compensation benefits.  For the reasons set forth below, I disagree and hold that substantial evidence supports the ALJ's decision.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ.  *Johnson*, 434 F.3d at 653.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]."  *Id.* (alteration in original) (internal quotation marks and citation omitted).

Keith first argues that the ALJ failed to properly analyze whether he was disabled by pain.  "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ must first determine whether the claimant suffers from a medical condition that could reasonably be expected to produce the alleged pain.  *Id.*; 20 C.F.R. § 404.1529 (2013).  If the ALJ finds that such a condition does exist, the ALJ must next assess the intensity and persistence of the claimant's pain and the extent to which it affects the claimant's ability to work.  *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529.  This second step takes into account all available evidence,

including medical records, any objective evidence of pain, and evidence of the claimant's activities of daily living. *Craig*, 76 F.3d at 595.

Here, the ALJ determined that Keith did suffer from a medically determinable impairment that was reasonably likely to cause the alleged pain. At step two, however, the ALJ found that Keith's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. The ALJ noted that Keith performs a wide range of physical activities in his daily life. The ALJ further pointed to the fact that Keith applied for thousands of jobs during the relevant time period, indicating that Keith himself believed he was capable of working despite his pain. Additionally, the record contains numerous references to negative straight leg raising and crossed leg tests, negative hip manipulation tests, good motor strength, and good ability to heel and toe walk, among other factors that tend to belie Keith's testimony that his pain was completely disabling. As noted above, it is the ALJ's task to make credibility determinations and to weigh conflicting evidence. The ALJ correctly applied the two-step analysis and reasonably concluded that Keith's pain was not so intense and persistent as to preclude him from working. This conclusion is supported by substantial evidence in the record, and it will be upheld.

Keith next argues that the ALJ erred by relying on the opinions of two non-examining state agency physicians. "[T]he testimony of a non-examining

physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Nevertheless, contrary to Keith's contention, the ALJ in this case did not give great weight to the opinions of the two state agency physicians who assessed his RFC.  Indeed, the ALJ found that the record as a whole indicated that Keith was more impaired than the state agency physicians opined, and the ALJ found that Keith had a more limited RFC than the state agency physicians had assessed.  Thus, Keith's argument regarding the weight given to the state agency physicians' opinions is without merit.

Keith also argues that the ALJ placed too much emphasis on his activities of daily living in determining his RFC.  Evidence of a claimant's activities of daily living is undoubtedly relevant to an assessment of the intensity and persistence of pain.  *See Craig*, 76 F.3d at 595 (expressly stating that the claimant's daily activities are "relevant to the severity of the impairment").  In addition to caring for himself and his family, gardening, and continually job-searching, Keith admitted that he exercises for a full hour nearly every day.  These activities contradict his testimony that he is constantly in severe, disabling pain.  The ALJ did not commit any error in considering Keith's daily activities when assessing the intensity and persistence of his pain.

Finally, during oral argument, Keith's counsel contended that the ALJ had improperly considered the fact that Keith had been awarded worker's

compensation benefits.  While the ALJ mentioned Keith's worker's compensation award in his decision, it was not a primary basis for the ALJ's findings.  After thoroughly reviewing the record evidence, the ALJ merely indicated that, "while not fully probative," Keith's receipt of worker's compensation benefits "did not provide the claimant with a strong incentive to return to work."  (R. at 27.)  This statement does not constitute reversible error, because substantial evidence in the record supports the ALJ's finding that Keith was not disabled under the Act.

## IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence.  The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  August 5, 2013

/s/  James P. Jones
United States District Judge